### THE WEST BRANCH.
### THE BRONX.

### SCHOONMAKER–CONNORS CO., Inc., v. BELL & KILCULLEN CO., Inc., et al.

District Court, S. D. New York.
May 22, 1930.

William F. Purdy, of New York City, for libelant.

Griggs, Baldwin & Baldwin, Peter F. Mc-Allister and John P. Coffin, all of New York City, for respondent.

Single & Single, of New York City, for claimant.

GODDARD, District Judge.

The libelant seeks to recover damages sustained as a result of its barge West Branch grounding in West Farms creek. On the afternoon of June 21, 1927, at about 4 p. m. the West Branch with a cargo of cement was towed by the tug Bronx up the West Farms creek for delivery at the dock of the respondent, Bell & Kilcullen, Inc., which is on the west side of the creek. Upon its arrival in the vicinity of Bell & Kilcullen's dock, the master of the tug Bronx observed that another barge, the Atlas, lay at the dock in process of unloading, and, after the master of the Bronx had conferred with Bell & Kilcullen's foreman, the West Branch was moored to the westerly bank of the creek between Bell & Kilcullen's dock and O'Hare's dock to the south, to await its turn in unloading at Bell & Kilcullen's dock. With her cargo the draft of the West Branch was seven feet.

It was conceded that when the tug departed, after delivering the barge to Bell & Kilcullen, Inc., the tide was high and she was then in a safe berth. The master of the Bronx warned the master of the West Branch to breast her off six or seven feet from the bulkhead, and his testimony and also that of the barge master is that this was done. The barge master also states that up to the time of her grounding she remained in that position. Bell & Kilcullen's foreman was present when the West Branch was moored, and the testimony is that he told the barge master to keep her breasted off about six feet; there is testimony in behalf of the respondent that she was breasted off about three feet from the bulkhead, but that testimony is not convincing. The barge master had never been in West Farms creek previous to this time, and was not familiar with it.

In the evening, about 11 p. m., upon falling tide, the West Branch grounded at the stern corner of her starboard side, which was toward the bulkhead, and sustained damage from twisting.

The libel against the claimant, Red Star Towing & Transportation Company was dismissed at the close of the trial.

There is testimony from apparently disinterested witnesses called by the respondent to the effect that they had often seen barges moored six or seven feet away from the bulkhead between the Bell & Kilcullen dock and O'Hare's dock, and, although they took the ground at low tide, it was a safe berth.

However, from a chart prepared by the United States engineer's office and received in evidence, it appears that between Bell & Kilcullen's dock and O'Hare's dock, which is some 130 feet to the south of Bell & Kilcullen's dock, there is an irregularly shaped bar extending out from the west bank; this bar is three to five feet in width at O'Hare's dock and broadens out to the width of some 25 feet at an extreme point between two docks and tapers off in width in the vicinity of Bell & Kilcullen's dock, and that at low tide there is 17 inches of water on the bar, and beyond it water varying in depth between 4 feet 5 inches to 5 feet 5 inches at low tide. It is apparent that as the tide went out the inward or starboard side of the bottom of the barge or a portion of it, depending upon the exact location of the barge, would rest on the bar, and that the remaining portion of her bottom would not. In such a situation, loaded as she was, she would be likely to sustain damage, and the proof is that she did.

The result in the case at bar and my finding as to the bar extending out from the bulkhead is consistent with the finding and decision of the Circuit Court of Appeals in The Eastchester, 20 F.(2d) 357, 1927 A. M. C. 1092, for an inspection of the chart of the United States engineers referred to above indicates that this bar, upon which the West Branch grounded, is a continuation of the bar described by Judge Swan in the opinion of the court, and it extends further out into the creek at the point where the West Branch grounded. And, as in the Eastchester Case, the consignee in the case at bar failed to use reasonable care to ascertain the condition of the berth and to properly warn the master of the West Branch, or to provide a safe berth.

The libelant is entitled to a decree with the usual reference to ascertain the damages.